**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| EDWARD BENNETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 06-CV-420-GKF-PJC |
| ) | |
| DAN FULLER, DANIEL EMBREY, TODD ) | |
| EVANS, TULSA POLICE DEPARTMENT, ) | |
| SEAN LARKIN, and CARL GOFORTH, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

This matter comes before the court on the Motion for Summary Judgment of defendants Dan Fuller ("Corporal Fuller"), Todd Evans ("Officer Evans"), Carl Goforth ("Officer Goforth"), Sean Larkin ("Officer Larkin") and Daniel Embrey ("Officer Embrey") [Document No. 37].

*Pro se* plaintiff Edward Bennett ("Bennett") alleges that defendant Tulsa Police Officers Fuller, Evans, Goforth, Larkin and Embrey unlawfully entered his grandparents' home and used excessive force when they arrested him in the early morning hours of August 15, 2004. Bennett's claims of unlawful entry and excessive force are claims arising under the Fourth Amendment and are actionable under 42 U.S.C. § 1983. Bennett also raises a state law claim of trespass to real property.[1]

In their Motion for Summary Judgment, defendants Fuller, Evans, Goforth, Larkin and Embrey argue that (1) Bennett is collaterally estopped from pursuing his § 1983 claim; (2) movants are entitled to summary judgment on Bennett's "unlawful entry" claim; (3) Bennett has failed to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), against Officers Goforth,

---

[1] In an Order entered August 16, 2007, [Document 35] this court liberally construed Bennett's Complaint and Amended Complaint to include state law claims for assault and battery and trespass to real property. The court dismissed the assault and battery claim as filed outside the applicable one year statute of limitations.

Larkin, and Embrey;[2] and (4) the officers are entitled to qualified immunity.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, [the court] must view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Bryant v. Farmers Insurance Exchange*, 432 F.3d 1114, 1124 (10th Cir. 2005). "The nonmoving party 'must identify sufficient evidence which would require submission of the case to a jury.' Where the nonmoving party bears the burden of proof at trial, that party must go beyond the pleadings and identify specific facts that demonstrate the existence of an issue to be tried by the jury." *Jencks v. Modern Woodmen of America*, 479 F.3d 1261, 1264 (10th Cir. 2007) (internal citations omitted).

On July 17, 2008, Bennett filed a response to the motion for summary judgment after having been granted a number of lengthy extensions. Bennett did not attach any evidentiary materials such as affidavits or deposition transcripts in order to (1) meet his burden on defendants' qualified immunity defense, or (2) identify specific facts that demonstrate the existence of an issue to be tried by the jury. Bennett has not complied with Local Civil Rule 56.1(c), which requires that

> The response brief in opposition to a motion for summary judgment (or partial summary judgment) shall begin with a section which contains a concise statement of material facts to which the party asserts genuine issues of fact exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable, shall state the number of the movant's facts that is disputed. All material facts set forth in the statement of the material facts of the movant shall be deemed admitted for the purpose of summary judgment unless

---

[2]Over a year ago, defendants Goforth and Larkin filed a previous 12(b)(6) motion [Document No. 23, pp. 6-7], which the court denied by written order [Document No. 35, p 7].

> specifically controverted by the statement of material facts of the opposing party.

Because Bennett did not set forth a statement of material facts specifically controverting the movants' statement of material facts, the vast majority of movants' material facts are deemed admitted. However, in deciding the motion, the court has considered the portion of Bennett's deposition which defendants appended to their motion wherein Bennett testified about the alleged excessive force. In addition, the court has considered the medical records Bennett appended to his Complaint, as they provide material facts about the nature and extent of Bennett's injuries.

There is no genuine issue with respect to the following facts. On August 14, 2004, at about 9:30 p.m., Ms. LaShedda Johnson flagged down Officer Embrey, a uniformed officer with the Tulsa Police Department. Ms. Johnson told Officer Embrey that earlier in the day she had taken her five year old son, Donovan, to 2127 East 28th Street North to visit his great grandparents. Ms. Johnson told Officer Embrey that she had received a call from Donovan at the great grandparents' home, that Donovan had told her "Daddy's acting weird and he tried to hit me," that Bennett was not supposed to be visiting Donovan at the residence, that she clearly heard Bennett's voice in the background, that Bennett had taken the phone from Donovan and hung up the phone, that Bennett was one of "Tulsa's Most Wanted," and that she was worried for Donovan's safety. Officer Embrey then called police records and confirmed that Bennett had several outstanding warrants for his arrest. The arrest warrants were: (1) a bench warrant issued March 1, 2000 on an Application to Accelerate Judgment on deferred sentences in felony Case No. CF-98-3583 in the District Court for Tulsa County, Oklahoma;[3] (2) a bench warrant issued January 21, 2000 on an Application to Revoke Suspended

---

[3] The state felony counts on which Bennett pled guilty and the state court entered deferred sentences on December 4, 1998 were: unlawful possession of marijuana with intent to distribute, and possession of a firearm while in commission of a felony.

Sentence relating to two misdemeanor domestic assault and battery judgments in Case No. CM-99-1981 in the District Court for Tulsa County, Oklahoma; (3) an arrest warrant issued September 7, 2000 in Case No. CM-2000-3339 in the District Court for Tulsa County, Oklahoma on three misdemeanor charges – domestic assault and battery in the presence of a minor child, violation of a protective order, and malicious injury to property. [Document No. 37-6, pp. 21-22]. The arrest warrants listed Bennett's address as 2127 E. 28th Street North. [Document No. 37-3, p. 1]. Officer Embrey then called for assistance from other officers.

Corporal Fuller and Officer Embrey knocked on the door at 2127 E. 28th Street North and spoke with Bennett's grandmother, Cynthia Bennett. Ms. Bennett told the officers that Bennett and Donovan had left. However, the officers noticed a freshly lit "Black and Mild" on the porch, together with a radio playing rap music, which led the officers to believe that Bennett was there. Corporal Fuller and Officer Embrey entered the residence but did not locate Bennett or Donovan.

Sometime later, Officer Embrey and Ms. Johnson were parked in a parking lot across the street discussing the situation when Ms. Johnson's cell phone rang. The cell phone indicated that the call was coming from the telephone in Bennett's grandparents' house. Officer Embrey heard a male voice telling Ms. Johnson that the male was going to kill her for sending the police to his grandmother's house. Ms. Johnson identified the voice as Bennett's. Ms. Johnson informed Officer Embrey that she had a protective order against Bennett. Officer Embrey called police records and confirmed that such a protective order existed against Bennett.

Not long thereafter, Officer Embrey and Officer Alisa Parrott were parked on the west side of the residence with the patrol car lights out. They saw a black male run around the corner of the house towards them, yelling. The male threw an object at Officer Embrey, which hit the side of the

officer's patrol car and shattered. The thrown object turned out to be a large yellow ash tray. Officer Embrey observed the male run into the residence and slam the door shut.

Officer Evans instructed other officers to telephone the residence to inform Bennett that he had outstanding arrest warrants and to order him to exit the residence and surrender. For about 20 minutes, the officers made telephone calls commanding Bennett to exit the residence and surrender. During the phone calls, Bennett yelled profanities at the officers, opened the drapes on the front window and used his middle finger to "flip off" the officers. Bennett then pulled his pants down, placed his buttocks against the window and "mooned" the officers. In short, Bennett refused to leave the residence and surrender. Bennett's grandparents and his five year old son, Donovan, were also in the residence.

Officer Goforth arrived at the residence with the arrest warrants at 12:22 a.m. on August 15, 2004.

Officer Evans formed an arrest team to take Bennett into custody. The team was comprised of Corporal Fuller, Officer Brian Hill, Officer Larkin, Officer Embrey, Officer Ben Lalli, Officer Goforth, and Officer Evans. Just before the team approached the house, Bennett opened the door and stepped partially outside. The officers again commanded Bennett to surrender. Bennett went back inside and locked the front door. The arrest team walked to the door. Corporal Fuller knocked and again ordered Bennett to surrender. Bennett did not comply. Officer Evans authorized Corporal Fuller to forcibly open the front door. With the arrest team at the doorway, and Bennett in view, the officers repeated their demands to surrender. Bennett refused. As officers made contact with Bennett, Bennett began to fight. He kicked Corporal Fuller in the upper leg and knee area. Bennett grabbed Officer Evans' gun belt and pulled at it, pulling Evans toward him. Officer Evans

struck Bennett with a closed fist on the left side of his torso to force Bennett to release his grip on the gun belt. Bennett fought the officers from the front living room into the kitchen, where the officers finally wrestled Bennett to the ground. The officers ordered Bennett to put his hands behind his back and surrender. Bennett refused to comply. Instead, he continued to resist, kicking at the officers and keeping his hands underneath his body to keep them from being handcuffed. Officers eventually forcibly placed Bennett's hands behind his back and handcuffed him.

Due to the presence of five-year-old Donovan and his great grandparents, the officers did not use pepper spray or a canine to subdue Bennett.

Bennett sustained a broken nose and a "right orbital blowout fracture" to his cheekbone in the struggle. The officers took him directly to the Tulsa Regional Medical Center, where doctors performed surgery in the form of an open reduction and internal fixation of the right orbital floor fracture. They also performed a closed reduction of the broken nose.

The only issues of disputed material fact relate to the cause and the timing of Bennett's injuries. The officers contend that Bennett's injuries were not the result of any intentional force, but occurred as a result of Bennett's resistence sometime during the lengthy struggle. Bennett contends that the injuries were the result of intentional force applied after the officers had subdued him. In his deposition, Bennett stated "as far as who kneed me to my face, I just seen some police pants, honestly. I seen some police pants kneed me to my face. I was already on the ground subdued and I got kneed to the face three times." [Document No 37-4, pp. 4, line 24 to p. 5, line 3].

Bennett pled no contest to a felony count of Assault and Battery Upon a Police Officer (Corporal Fuller), a misdemeanor count of Resisting an Officer (Officers Larkin and Embrey), and a misdemeanor count of Violation of Protective Order (threatening to kill Ms. Johnson). He was

sentenced to three (3) years in prison, with the sentences running concurrently and with credit for time served.

The *Heck v. Humphrey* Bar

The court first addresses movants' argument that "collateral estoppel precludes [Bennett] from pursuing his Section 1983 claim." In support, movants cite *Heck v. Humphrey*, 512 U.S. 477 (1994), wherein the Supreme Court reaffirmed the principle that civil tort actions are not appropriate vehicles for mounting collateral attacks on the validity of outstanding criminal judgments. In *Heck*, the Court held that before a § 1983 plaintiff may recover damages for alleged harm "caused by actions whose unlawfulness would render a conviction or sentence invalid," the plaintiff must prove that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.* at 486-87. In order to determine whether a claim for damages is barred under *Heck*, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . ." *Id.* at 487. If so, the complaint must be dismissed until the plaintiff can show the conviction or sentence has been invalidated. However, "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed . . . ." *Id.*

In this case, Bennett pled no contest to the felony of Assault and Battery upon a Police Officer; he pled guilty to the misdemeanor offenses of Resisting an Officer; and he pled guilty to the misdemeanor offense of Violation of Protective Order. [Document No.37-5, pp. 52-61]. Movants wholly fail to show (or attempt to show) how a judgment in Bennett's favor on his § 1983

7

claim would *necessarily* imply the invalidity of his convictions or sentences on the three charges. In *VanGilder v. Baker*, 435 F.3d 689 (7th Cir. 2006), the Seventh Circuit Court of Appeals held that an action against a police officer for excessive force did not necessarily imply the invalidity of the plaintiff's conviction for resisting the officer. *Id.* at 692. The plaintiff, VanGilder, did not collaterally attack his conviction or deny that he resisted the officer's order. Rather, VanGilder claimed that he suffered unnecessary injuries because the officer's response to his resistance was not, under the law governing excessive use of force, objectively reasonable.

Bennett states in his most recent filing that he is not denying resistance. [Document 57, p. 3].[4] Rather, he says that the force used was excessive in comparison to the need therefor. Because the movants have offered no basis for this court to conclude that a judgment in favor of Bennett on his § 1983 action for excessive force would necessarily imply the invalidity of Bennett's criminal convictions, the *Heck* bar does not provide a basis for summary judgment.

<u>Unlawful Entry</u>

Bennett's claim of unlawful entry arises under the Fourth Amendment. The Fourth Amendment is applicable to the state of Oklahoma and the City of Tulsa under the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

Bennett alleges the "[a]bsence of a valid search warrant" to enter his grandparents' home, where he was living [Complaint, p. 2], and that the officers did not obtain the arrest warrants until 25 to 30 minutes before their second entry into the home [Document No. 57, p. 3]. It is uncontested, however, that prior to the officers' first entry into the home, Officer Embrey had called Police Records and confirmed that Bennett had several outstanding warrants for his arrest. "[F]ederal

---

[4]Bennett qualifies his admission by claiming that he resisted arrest only insofar as he did not come outside the house to be arrested.

constitutional law does not require the actual possession of a warrant in cases where the arresting officer has knowledge of its existence." *Edwards v. Baer*, 863 F.2d 606, 608 (8th Cir. 1988)(citing *Washington v. Simpson*, 806 F.2d 192, 196 n. 4 (8th Cir. 1986); *U.S. v. Ritchie*, 35 F.3d 1477, 1482-83 (10th Cir. 1994). One of the circumstances which may permit an entry into a residence without a search warrant is the existence of a valid arrest warrant for a suspect who is believed to live in the residence. *Valdez v. McPheters*, 172 F.3d 1220, 1224 (10th Cir. 1999). In this case, the officers had a reasonable belief that Bennett lived in the home. The arrest warrant listed Bennett's residence as 2127 E. 28th St. N. [Document No. 37-3, p. 1, ¶ 3]. Moreover, the officers had a reason to believe that Bennett was within the house at the time. Bennett's five year old son had called his mother from the residence and reportedly told her that "Daddy's acting weird and he tried to hit me," and the mother related the conversation to Officer Embrey. At the door of the residence, Bennett's grandmother stated that Bennett had left, but a radio on the porch playing rap music and a freshly lit "Black and Mild" on the porch led the officers to believe that Bennett was still there. As for the second entry into the home, the officers knew Bennett was inside, as he had thrown a large yellow ashtray at Officer Embrey, then ran inside the house, where he "flipped off" and "mooned" the officers through the front window. The court concludes that the officers' two entries into the home were lawful, and that Bennett's Fourth Amendment Rights as an occupant were not violated thereby. Movants are therefore entitled to summary judgment on Bennett's Fourth Amendment claim of unlawful entry.

On their face, Bennett's Complaint and Amended Complaint do not raise a state law tort claim for unlawful entry. However, in their Motion to Dismiss [Document No. 23, p. 1], defendants moved to dismiss plaintiff's "civil action for the state tort of unlawful entry. As noted in footnote

9

1, above, the court construes Bennett's pleadings liberally to allege the state law tort of trespass to real property. [Document No. 35, p. 6]. Under Oklahoma law, a trespass involves an actual physical invasion of the real estate of another without the permission of the person lawfully entitled to possession. *Williamson v. Fowler Toyota, Inc.*, 956 P.2d 858, 862 (Okla. 1998). In this case, Bennett has no standing to assert a state tort claim for trespass, as it is undisputed that the real estate belonged to his grandparents. [Bennett Deposition, Document No. 37-4, p. 2 line 19 through p. 3 line 3]. Defendant officers are therefore entitled to summary judgment on Bennett's state tort claim of trespass to real property.

Failure to State a Claim against Officers Goforth, Larkin, and Embrey

Movants characterize Section V of their Motion for Summary Judgment as a 12(b)(6) motion on behalf of Officers Goforth, Larkin and Embrey.

Embrey filed an Answer [Document No. 9] to the original Complaint and an Answer to the Amended Complaint [Document No. 14]. He did not raise a 12(b)(6) defense in either pleading. Although Fed.R.Civ.P. 12(h) preserves the defense, the Rule does not permit the defense to be raised in a motion for summary judgment. Even if the court were to consider this portion of the motion as one for judgment on the pleadings, the motion must be denied, as Bennett lists Officer Embrey in his Complaint as one of the officers involved in the use of excessive force during the arrest. [Docket No. 1, p.3].

Officers Goforth and Larkin previously filed a 12(b)(6) motion to dismiss. The court denied the motion for the reasons set forth in a written order [Document No. 35, p. 7]. To the extent the officers merely restate their previously-rejected arguments on pages 17 and 18 of the current motion, those arguments are stricken.

To the extent that the officers seek summary adjudication in Section V on the grounds that, in his deposition, Bennett could not specifically identify any officer other than Evans and Fuller as using force during the arrest, the motion must be denied. Plaintiff testified that he was on the ground during the incident and could not make out all the officers' faces until he had been handcuffed. [Document No. 37-4, p. 4]. Moreover, it is not necessary that a police officer actually participate in the use of excessive force in order to be held liable under § 1983. Rather, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable for his nonfeasance. *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1441-42 (11th Cir. 1985). The court therefore finds and concludes that Officers Goforth, Larkin and Embrey are not entitled to dismissal and/or summary judgment on the grounds set forth in Section V.

Qualified Immunity

A court presented with a summary judgment motion based on qualified immunity must first answer a threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "[T]he next, sequential step is to ask whether the right was clearly established." *Id.* With regard to this second step, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful" under the circumstances presented. *Id.* at 202. If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment-showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008); *Nelson v.*

11

*McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000).

Bennett's excessive force claim is grounded in the Fourth Amendment. All claims that law enforcement officers have used excessive force in the course of an arrest are analyzed under the Fourth Amendment's standard of reasonableness. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Id.* at 396, citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). "[H]owever, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Id.* at 397.

First, the court considers the severity of the crimes at issue. As set forth above, there were three outstanding bench warrants for Bennett's arrest – one bench warrant on an Application to Accelerate two deferred sentences in a felony case, a bench warrant on an Application to Revoke Suspended Sentence relating to two misdemeanor domestic assault and battery judgments, and an arrest warrant on three additional misdemeanor charges – domestic assault and battery in the presence of a minor child, violation of a protective order, and malicious injury to property. In addition, Officer Embrey had witnessed an additional violation of a protective order when Bennett threatened to kill Ms. Johnson.

Second, Bennett clearly posed an immediate threat to the safety of officers and others. He had thrown a heavy yellow ash tray at Officer Embrey. He was otherwise agitated, combative, and provocative in his interactions with the officers. The officers were aware of a potential threat to others, as Johnson had informed Officer Embrey that Donovan had called his mother and told her that "Daddy's acting weird and he tried to hit me." During the arrest, Bennett posed a dire threat to the safety of everyone in the vicinity when he grabbed Evans' gunbelt and pulled it. Bennett posed an immediate threat to the officers when he kicked Officer Fuller, fought the officers from the living room into the kitchen, and when, even after taken down to the floor, he kept his hands underneath his body to keep them from being handcuffed.

Third, Bennett actively resisted arrest until, after a long struggle, the officers forced him into handcuffs.

On the other side of the reasonableness scale, the injuries to Bennett's face were significant, and, in his deposition, Bennett testified that the blows to his face were delivered by an officer's knee after he had been subdued. Whether by "subdued" Bennett meant that the blows were delivered after he had been handcuffed or that they were delivered while he was refusing to place his hands behind his back is, in this court's view, significant in the context of the facts and circumstances of this case.

To deliver blows in an attempt to force a combative arrestee who had just grabbed a fellow officer's gun belt to place his arms behind his back to be handcuffed may not be objectively unreasonable. However, delivering blows with one's knee to the face of a handcuffed and fully restrained arrestee is objectively unreasonable, despite the arrestee's previous resistance and threat to the safety of others. Under the law, a court required to rule upon a qualified immunity issue must consider this

13

threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. Viewing Bennett's factual allegations in the light most favorable to Bennett, those alleged facts constitute an arguable claim that the officers violated Bennett's Fourth Amendment rights by using excessive force. This satisfies the first part of Bennett's burden in response to the officers' assertion of qualified immunity.

Bennett must also demonstrate that the relevant law was clearly established when the alleged violation occurred. Upon review of the briefs submitted by the parties, the court concludes that it would be apparent to a reasonable officer that delivering blows to the face of a handcuffed and fully subdued arrestee was unlawful.

As Bennett has met the two-part test, the defendants bear the traditional burden of showing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. *Nelson*, 207 F.3d at 1206. Upon review of the briefs, the court concludes that movants have failed to meet that burden, and genuine issues of material fact remain which preclude summary adjudication on the excessive force claim.

**WHEREFORE**, the Motion for Summary Judgment of defendants Dan Fuller, Todd Evans, Carl Goforth, Sean Larkin, and Daniel Embry [Document No. 37] is granted in part (as to plaintiff's claims of unlawful entry and trespass to real property) and denied in part (as to plaintiff's claim of excessive use of force).

**IT IS SO ORDERED** this 31st day of July 2008.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma